UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES, <br><br> v. <br><br> ALFUQUAN TURNER. | Crim. No. 19-763 (WJM) <br><br> OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

### I. INTRODUCTION

On or about October 21, 2019, Defendant Alfuquan Turner ("Defendant") was indicted on one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), for robbing a cab company in Harrison, New Jersey, one month earlier, on September 23, 2019.[1] ECF No. 9. Defendant pleaded not guilty on November 7, 2019. ECF No. 10. Due to the profound impact of the Covid-19 pandemic on court operations since March of 2020, a trial date has not yet been scheduled.

This matter is now before the Court on Defendant's multiple pretrial motions to compel discovery, to suppress certain evidence and hold a hearing, and to dismiss the Indictment. ECF Nos. 29, 30, 31, 37, 38, 39. The Government filed consolidated oppositions to the motions, ECF Nos. 33, 52, to which Defendant filed a reply. ECF No. 54. Having carefully considered the parties' submissions, the Court grants Defendant's motions in part and denies them in part in the manner articulated below.

### II. DISCUSSION

#### A. Motion for Advance Production of *Brady* and *Giglio* Material

Defendant moves for the advance production of evidence and materials as required under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972). ECF No. 29. The Government responds that it understands its *Brady* obligations and will disclose all exculpatory evidence in a prompt and timely manner. ECF No. 33 at 6-7. Indeed, the Government has a continuing obligation to do so pursuant to the Court's Scheduling Order of December 14, 2020. ECF No. 21. At the present time, however, the Government is not in possession of, nor is it aware of, any exculpatory evidence. ECF No. 33 at 6-7.

---

[1] Because the Court writes for the benefit of the parties, who are well acquainted with the underlying circumstances of this case, the Court dispenses with a detailed recitation of the facts and procedural history.

With respect to *Giglio* evidence, the Government correctly argues that it is not obligated to produce such materials to Defendant prior to trial. *Id.* at 8; *see United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). Nevertheless, the Government recognizes the benefit in disclosing *Giglio* evidence in advance and states it will voluntarily disclose this evidence at least seven days prior to trial. ECF No. 33 at 8.

Accordingly, Defendant's motion for advance production of *Brady* and *Giglio* material, ECF No. 29, is **DENIED**. If the Government comes to possess or discover any *Brady* evidence, it **SHALL** promptly provide it to Defendant. Pursuant to the Government's offer, and to avoid unwarranted delay, the Government **SHALL** provide *Giglio* evidence at least seven days before trial.

### B. Motions to Compel Discovery

Defendant moves for an Order compelling the Government to produce a considerable amount of discovery, including Jencks Act material, police investigation reports, search warrants, surveillance footage and the still photos captured therefrom, information about the surveillance systems, information about the identification procedure and photo array shown to the Victim, the Victim's descriptions of the Defendant, the Victim's interactions with police, the Victim's name and information bearing on her competency, police training manuals, DNA evidence and related expert reports, and approximately twenty-three categories of information related to the facial recognition software used by the Hudson County Prosecutor's Office. *See generally* ECF Nos. 30, 37.

After reviewing each of Defendant's requests and the Government's responses thereto, the Court finds that the Government has produced all discovery in its possession and to which Defendant is entitled at this time. To the extent Defendant seeks early disclosure of Jencks Act material, the Government correctly argues that such material is not subject to mandatory disclosure before trial. ECF No. 33 at 8-9; *see* 18 U.S.C. § 3500(b); *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978). Nevertheless, the Government recognizes the benefit in disclosing Jencks Act material in advance of trial and states it will voluntarily disclose this material at least seven days prior to trial.

Accordingly, Defendant's motions for discovery, ECF Nos. 30, 37, are **DENIED**. Pursuant to the Government's offer, and to avoid unwarranted delay, the Government **SHALL** provide Jencks Act material at least seven days before trial.

### C. Motions to Suppress and for a Hearing

Defendant moves to suppress the following evidence: the Victim's out-of-court identification and any in-court identification that follows; any uncounseled statements Defendant made; and all video footage from the cab company and surrounding areas. *See generally* ECF Nos. 31-1, 38. He requests a hearing on these issues, as well as on the

admissibility of evidence the Government may seek to introduce under Federal Rules of Evidence 609 and 404(b).

The decision of whether to hold a suppression hearing is within the Court's discretion. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (overruled in other respects). To be entitled to an evidentiary hearing, a defendant's moving papers must be sufficiently specific, non-conjectural, and detailed enough to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion. *Id.* (citing *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)); *see also United States v. Blackman*, 407 F. App'x 591, 594-95 (3d Cir. 2011) (citing same).

### *1. Out-of-Court Identification and In-Court Identification*

Defendant argues the Victim's out-of-court identification, and any in-court identification that follows, is unreliable and must be suppressed. *See generally* ECF Nos. 31-1, 38. "A pretrial identification procedure violates a defendant's constitutional right to due process when it both (1) is unnecessarily suggestive and (2) creates a substantial risk of misidentification." *United States v. Burnett*, 773 F.3d 122, 133 (3d Cir. 2014). "A court should suppress an identification only where 'the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "The use of a photo array may violate due process 'when police attempt to emphasize the photo of a given suspect, or when circumstances surrounding the array unduly suggest who an identifying witness should select.'" *Id.* (quoting *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir.2003)).

Defendant challenges the reliability of the photo array shown to the Victim. He argues that law enforcement identified him by using facial recognition technology, a "faulty and flawed process that produces unduly suggestive results." ECF No. 38 at 2. Specifically, to identify Defendant, a detective at the Hudson County Prosecutor's Office entered screenshots into facial recognition software that generated a series of photos from the software's database. *Id.* Defendant argues that for facial recognition software to work, the software has to first "manipulate" or "normalize" the input image by scaling, rotating, and aligning it. *Id.* at 7. The officer operating the software can edit and manipulate the input image even further to increase the odds of matches. *Id.* at 7-8. Then, when the software processes the input image and generates a list of ranked photo matches, it is the officer—not the software—choosing the photo that best matches the input image. *Id.* at 9. Defendant asserts that this process is subject not only to human error and the officer's cognitive biases, but also to the software's notoriously poor ability at recognizing African American faces. *Id.* at 11.

Defendant also challenges the reliability of the October 8, 2019 identification procedure administered to the Victim by the Harrison Police Department. *See generally* ECF No. 31-1. Defendant points to several alleged flaws demonstrable in the videorecorded

identification procedure, including that the officer has her back to the camera, so Defendant is unable to determine whether the officer provided non-verbal cues or feedback to the Victim, and that the video's intermittent inaudibility prevents Defendant from being able to determine that the officer did not say anything improper, leading, or suggestive. *Id.* at 13-14. Defendant argues that the Victim's brief, highly stressful encounter with her assailant, coupled with the presence of a weapon and the fact that the identification was cross-racial, further undermines the reliability of her out-of-court identification. *Id.* at 16-18.

In light of these arguments, the Court finds an evidentiary hearing is warranted to determine the admissibility of both the photo array and the Victim's out-of-court identification. Defendant's request for a hearing on these issues is therefore **GRANTED**.

### 2. *Uncounseled Statements*

Defendant argues that on October 7, 2019, law enforcement interviewed him for almost two hours without the benefit of counsel and an evidentiary hearing is warranted to determine the voluntariness of his statements. *Id.* at 21-22. But Defendant makes no specific argument as to why his statements that day would not have been voluntary. For instance, he does not argue that he was coerced by police or that he was not properly advised of or did not understand his rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). The Court therefore **RESERVES** its decision on whether Defendant effectively waived his *Miranda* rights.

### 3. *Video Footage from the Cab Company and Surrounding Area*

Defendant argues that all video footage, including the footage of the robbery from the cab company, the footage of the Victim's identification, and the footage taken from the PATH and local businesses, must be suppressed because it is irrelevant and overly prejudicial. ECF No. 31-1 at 22-24. As presently argued, however, these assertions are baseless.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "that fact is of consequence in determining the action." Fed. R. Evid. 401. A court, however, may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . *unfair* prejudice," among other things. Fed. R. Evid. 403 (emphasis added). While the video footage certainly may be damaging to Defendant in the sense that it may be persuasive, Defendant has advanced no compelling argument as to how the footage is *unfairly* prejudicial, such that its exclusion is warranted. *See United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021) ("[Rule 403] does not protect defendants from devastating evidence in general."). Accordingly, Defendant's request to suppress all video footage from the cab company and surrounding area is **DENIED**.

### 4. *FRE 609 and 404(b) Evidence*

4

Defendant requests a hearing on the admissibility of his prior convictions for impeachment purposes under FRE 609(a)(1) and (2) at least two weeks before trial. ECF No. 31-1 at 24. The Government concedes it likely will not attempt to impeach Defendant with any of his prior convictions because they are outside FRE 609(b)'s ten-year lookback period. ECF No. 33 at 27-28. Defendant's request for a hearing is therefore **DENIED** as moot. Should the Government change its position, FRE 609(b)(2) requires the Government to provide Defendant with "reasonable written notice" of its intent to impeach him with prior convictions older than ten years. Accordingly, the Government **SHALL** file notice of any FRE 609 evidence at least fourteen days before trial. Defendant may renew his request for a hearing at that time.

Similarly, Defendant requests the Government disclose any evidence of other crimes, wrongs, or acts that it may seek to introduce against him under FRE 404(b) so that the Court may hold a hearing on admissibility. ECF No. 31-1 at 25. FRE 404(b) requires the Government to provide "reasonable notice" prior to trial of its intention to use such evidence. Accordingly, the Government **SHALL** file notice of any FRE 404(b) evidence at least fourteen days before trial. Defendant may renew his request for a hearing at that time.

### 5. *DNA Evidence*

Defendant advises the Court of his intention to move to suppress any DNA evidence collected from the knife used in the robbery. ECF No. 38 at 15. The Government concedes it does not intend to rely on the DNA evidence in its case-in-chief because there was insufficient DNA on the knife to test against Defendant's DNA. ECF No. 52 at 3. As Defendant has not yet substantively challenged the DNA evidence, and considering the Government's response, any issue concerning the suppression of this evidence is presently moot.

### D. Motion to Dismiss the Indictment

Lastly, Defendant moves to dismiss the Indictment with prejudice or, in the alternative, to preclude certain evidence, for violation of his right to a speedy trial under the Sixth Amendment, Speedy Trial Act, and Federal Rule of Criminal Procedure 48. *See generally* ECF No. 39. Defendant argues that the Government delayed trial and prolonged his pretrial detention by willfully impeding the turnover of discovery. *Id.*

To determine whether post-indictment delay violates a defendant's Sixth Amendment right to a speedy trial, courts balance: (1) the length of delay; (2) the reason for delay; (3) the timeliness and vigor of the defendant's assertion of his speedy trial right; and (4) the degree of prejudice the defendant has suffered. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The delay must be viewed through the lens of the particular circumstances of the case. *Id.* at 530–31.

Giving effect to the Sixth Amendment right to a speedy trial is the Speedy Trial Act, under which a defendant has a right to be tried "within seventy days from the filing date (and

5

making public) of the information or indictment." 18 U.S.C. § 3161(c)(1). "Numerous courts have indicated 'it would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not.'" *United States v. Escalante-Melgar*, No. 16-453, 2020 WL 968091, at *18 (D.N.J. Feb. 28, 2020) (quoting *United States v. Aldaco*, 477 F.3d 1008, 1018 (6th Cir. 2007) and collecting cases). Thus, the Court begins its analysis by calculating the days that have run under the Speedy Trial Act.

The Government filed the Complaint in this matter on October 9, 2019, and Defendant has been detained at Hudson County Correctional Center for just as long. Defendant consented to three Continuance Orders excluding the time from October 10, 2019, through January 7, 2020, and from January 9, 2020 through March 13, 2020. ECF Nos. 8, 12, 13. Due to the Covid-19 pandemic, Chief District Judge Freda L. Wolfson entered a series of Standing Orders excluding the time between March 16, 2020, and June 1, 2021, and between December 29, 2021, and January 31, 2022. Courts in this District have found Chief Judge Wolfson's Standing Orders issued in response to the ongoing global pandemic to be "supported by detailed findings, and provide[ ] a sound factual and legal basis that any delays are supported by the ends of justice, consistent with the Speedy Trial Act and the Sixth Amendment." *United States v. Kaetz*, 2021 WL 37925, at *8, n.8 (D.N.J. Jan. 4, 2021); *see United States v. Chu*, No. 19-678, 2021 WL 879905, at *4 (D.N.J. Mar. 9, 2021); *United States v. Lev*, No. 17-3195, 2020 WL 2615477, at *3 (D.N.J. May 22, 2020).

Within that time frame, the Court entered an amended Schedule for Discovery and Inspection on December 14, 2020, and set a new deadline to file pretrial motions by April 30, 2021. Defendant filed his initial series of pretrial motions on April 16, 2021. For reasons unknown, the Government did not respond to the motions until May 14, 2021, but provided Defendant with additional discovery that rendered Defendant's motions largely moot.

In response to this batch of discovery, and before the Court could rule on Defendant's initial series of motions, Defendant filed a second series of motions, including this motion to dismiss. The number of motions filed, and the change in counsel for both the Government and Defendant in the midst of briefing, resulted in an extended briefing schedule, with the motions fully briefed as of October 4, 2021. The delay resulting from Defendant's pretrial motions, "from the date of the filing of the motion through the date of the prompt disposition of the motion, is excluded from the computation of Speedy Trial Act time." *United States v. Erby*, 419 F. App'x 176, 179 (3d Cir. 2011) (quoting *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir.1993)) (quotation marks omitted). Accordingly, it appears only four days of Speedy Trial Act time is unaccounted for here: October 9, 2019, January 8, 2020, March 14, 2020, and March 15, 2020. The Court cannot conclude that the speedy trial clock has expired in this case.

Similarly, the Court cannot conclude that Defendant's Sixth Amendment right to a speedy trial has been violated. It is evident from the parties' briefing that the exchange of discovery has been particularly contentious, but the delay in this case cannot be attributed solely to the Government; rather, it necessarily stems from the ongoing pandemic, the discontinuation of jury trials to protect the public health and safety, and the parties' extensive

pretrial motion practice. Likewise, any prejudice to Defendant in the form of his pretrial incarceration cannot be attributed to what Defendant characterizes as the Government's outright refusal to comply with its discovery obligations. ECF No. 39 at 12. Defendant's motion to dismiss the Indictment with prejudice or, in the alternative, to preclude certain evidence, ECF No. 39, is therefore **DENIED**.

### III.   CONCLUSION

For the reasons stated above, Defendant's request for an evidentiary hearing to determine the admissibility of the photo array and the Victim's out-of-court identification is **GRANTED**. ECF Nos. 31, 38. The Court **RESERVES** its decision on whether Defendant effectively waived his *Miranda* rights. All other relief sought in Defendant's pretrial motions, ECF Nos. 29, 30, 31, 37, 38, 39, is **DENIED**. Should Defendant seek to file additional pretrial motions, such motions must be based on newly available information and be non-duplicative of motions previously filed.

An appropriate Order shall follow.

                                                  /s/ William J. Martini
                                         **WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 31, 2022**