UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**ALFUQUAN TURNER.** | Crim. No. 2:19-cr-763-WJM<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

This matter comes before the Court on defendant Alfuquan Turner's ("Turner") motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. ECF No. 99. For the reasons set forth below, Turner's motion is **DENIED**.

## I.    BACKGROUND

On May 10, 2022, a Superseding Indictment charged Turner with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). ECF No. 72.

The case proceeded to a jury trial on June 1, 2022. The Government's evidence showed that on September 23, 2019, Turner entered Harrison Taxi, a transportation service located under the Harrison PATH station in Harrison, New Jersey, walked behind the dispatcher's desk with a plastic bag over his head, held a knife over the dispatcher, and repeatedly demanded money. The dispatcher told Turner there was no money in the office. Turner and the dispatcher struggled, and Turner pulled the plastic bag off his head, uncovering his face and exposing it to the audio/video surveillance camera facing the dispatcher's desk. Turner grabbed the dispatcher's iPhone off her desk and attempted to flee the office. The dispatcher chased after him and a violent struggle ensued wherein Turner choked the dispatcher until she lost consciousness and left her on the floor incapacitated. Turner then fled Harrison Taxi with the dispatcher's iPhone, earbuds, and jewelry.

At the close of the Government's case, Turner moved for a judgment of acquittal pursuant to Rule 29(a), arguing the Government proffered insufficient evidence for conviction under the Hobbs Act. Specifically, Turner challenged the sufficiency of the Government's evidence that his conduct affected interstate commerce. The Court heard brief oral argument from both sides but reserved judgment on the motion pending a verdict from the jury pursuant to Rule 29(b).

After the close of trial on June 7, 2022, the jury returned a verdict of guilty on the single count for Hobbs Act robbery. Turner subsequently renewed his motion for a

judgment of acquittal pursuant to Rule 29(c). ECF Nos. 95, 99. The Government opposed the motion, ECF No. 97, and Turner filed a reply, ECF No. 100.

## II.    LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure provides that upon a defendant's motion at trial, or upon the renewal of such motion within fourteen days after the jury returns a guilty verdict, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c)(1). The Court must sustain the verdict so long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). In making this determination, the Court is not to act as a thirteenth juror and must be careful "not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Caraballo-Rodriquez*, 726 F.3d 418, 430 (3d Cir. 2013) (quotation marks omitted). Rather, the Court must consider the evidence in its entirety, as well as any inferences that may be drawn therefrom, in the light most favorable to the prosecution and to sustaining the jury's verdict. *United States v. Thompson*, 675 F. App'x 221, 224-25 (3d Cir. 2017). To that end, "[t]he evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.3d 1084, 1129 (3d Cir. 1984). Accordingly, judgments of acquittal due to insufficiency of the evidence "should be confined to cases where the prosecution's failure is clear," *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quotation marks omitted), such that "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991).

## III.    DISCUSSION

The crux of Turner's motion under Rule 29(a) and his renewed motion under Rule 29(c) is whether the Government proffered sufficient evidence at trial to satisfy the effect on interstate commerce element required for a conviction under the Hobbs Act. Specifically, Turner argues that the Government failed to present evidence that the robbery affected Harrison Taxi's property, depleted its assets and revenue, or resulted in cabs losing fares and missing customer pick-ups. *See* ECF No. 99 at 4-5.

The Hobbs Act makes robbery a federal crime where the defendant "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). The statute defines commerce as "all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." *Id.* § 1951(b)(3). A conviction under the Hobbs Act therefore requires proof beyond a reasonable doubt of two elements: first, that the defendant knowingly or willfully committed, or attempted to commit, robbery; and second, and most relevant to the present

motion, that the defendant's conduct affected interstate commerce. *United States v. Powell*, 693 F.3d 398, 401 (3d Cir. 2012); *United States v. Walker*, 657 F.3d 160, 178-79 (3d Cir. 2011).

"[T]he charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference[.] However, the burden on the Government is very low." *United States v. Rutherford*, 236 F. App'x 835, 839 (3d Cir. 2007) (quotation marks and citation omitted). In some cases, the Government can and often will rely upon the "depletion of assets" theory, "under which 'proof that a Hobbs Act violation depletes the assets of a business engaged in interstate commerce conclusively establishes the effect on commerce requirement[.]'" *Walker*, 657 F.3d at 183 (quoting *United States v. Urban*, 404 F.3d 754, 762 (3d Cir. 2005)). But this theory is not the exclusive means by which the Hobbs Act's interstate commerce element may be satisfied. *Id.* (rejecting defendants' argument that the evidence supporting their convictions was insufficient because the government did not use the "depletion of assets" theory). Third Circuit jurisprudence is clear that as to this element, the Government is only required to present evidence proving that the defendant's conduct "produces any interference with or effect upon interstate commerce, *whether slight, subtle or even potential*, . . . to uphold a prosecution under [the Hobbs Act]." *United States v. Haywood*, 363 F.3d 200, 210 (3d Cir. 2004) (citation and quotation marks omitted) (emphasis added); *Powell*, 693 F.3d at 402 ("We have stressed that 'proof of a *de minimis* effect on interstate commerce is all that is required' . . . . Moreover, the effect may be potential, not actual."); *Urban*, 404 F.3d at 763-64 (A "reasonably probable effect on commerce, however minimal," is sufficient to show "the effect on commerce" element of Hobbs Act robbery.).

Applying this standard, the Court finds that the evidence presented at trial, viewed in the light most favorable to the Government, satisfied the effect on interstate commerce element.

First, the Government presented evidence from which a rational jury could conclude that Harrison Taxi was a business engaged in interstate commerce. The dispatcher's testimony at trial demonstrated that Harrison Taxi engaged in interstate commerce by providing transportation service to Harrison, Kearny, Newark, Newark Airport, New York, and New York airports. Trial Tr. Vol. I at 35:2-35:25. Three to five cars were available during any given twelve-hour shift, and customers would order a ride by telephone or in-person at the Harrison Taxi office by speaking with the dispatcher, who dispatched the cars to various pick-up locations and provided pricing information. *Id.* at 29:3-29:22, 30:6-30:21. The dispatcher testified that she communicated with the drivers via a two-way radio or on her personal cell phone when the drivers were out of range. *Id.* at 32:14-33:5. At the end of the drivers' shifts, they would provide the dispatcher with the collected cash fares, which the dispatcher would then place in a safe located in the dispatcher's office. *Id.* at 31:13-32:13. As only one dispatcher worked any given shift, if the dispatcher had to, for instance, step away to use the restroom, a driver would take over dispatching duties. *Id.* at 38:2-38:9.

Next, the Government presented evidence from which a rational jury could conclude that the robbery itself was intended to steal money from Harrison Taxi's business, even if Turner only succeeded in stealing the dispatcher's personal effects. Turner entered Harrison Taxi behind another customer and waited until that customer left and the dispatcher was alone before he entered her office, brandished a knife, and demanded money. Aware that management had already collected the cash in the safe, the dispatcher told Turner several times "there's no money in the office." *Id.* at 51:10-51:12, 60:16-61:4.

Finally, the Government presented evidence from which a rational jury could conclude that the robbery impacted Harrison Taxi's ability to operate, thereby impacting its ability to engage in interstate commerce. While the robbery occurred, and as the dispatcher lay unconscious after Turner fled the office, the dispatcher was unable to dispatch taxis for customers or have any communication with the drivers. The dispatcher testified, and the surveillance footage from the office showed, that she was contacted on the two-way radio and the office phone at least four times while the robbery took place. *Id.* at 63:13-64:3, 65:4-65:9, 65:13-66:7, 66:15-66:17. The dispatcher explained that each time the radio or phone can be heard in the surveillance video, she, as the sole dispatcher, was unable to respond because she was either being held at knife point, struggling with Turner, or unconscious. While Turner is correct that the exact nature of those calls is unknown, *see* ECF No. 100 at 1, a rational jury could reasonably infer from the dispatcher's testimony about how the business operated that the drivers and/or a customer were attempting to reach her. Because she was unable to respond to those calls and dispatch or coordinate taxi rides throughout the robbery, Harrison Taxi could not provide transportation services to customers seeking to travel within New Jersey or out of state to New York. To that end, a rational jury could conclude that the robbery had at least a *de minimis*, potential effect on interstate commerce.

For these reasons, the Court finds the Government presented sufficient evidence at trial that Turner's conduct affected interstate commerce to sustain a conviction under the Hobbs Act. Turner's motion for a judgment of acquittal pursuant to Rule 29 is therefore denied.

## IV.  CONCLUSION

For the reasons set forth above, Turner's motion for a judgment of acquittal pursuant to Rule 29, ECF No. 99, is **DENIED**.

An appropriate Order shall follow.



        /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 10, 2022**